IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA HAVENSTRITE JONAS HAVENSTRITE, DANIEL ANDRADE, AND MICHAEL CHAPMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>vs.<br><br>HARTFORD LIFE INSURANCE COMPANY,<br><br>DEFENDANT. | Civil Action Number 08CV410 GKF PJC<br><br>Jury demanded |

## NAMED PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Melissa and Jonas Havenstrite, Daniel Andrade, and Michael Chapman, (collectively "the Plaintiffs") seek to recover the profits Hartford Life Insurance Company made by using, without permission or consent, their personal and private information to maintain policies insuring their lives and those of others similarly situated. The Plaintiffs also ask the Court to certify a plaintiff class in this case.

### JURISDICTION AND VENUE

1. The court has jurisdiction through 28 U.S.C. § 1332 because the putative class exceeds 100 members and the amount it seeks to recover exceeds $5 million. Venue is appropriate in this district because Hartford Life Insurance Company is subject to personal jurisdiction in the Northern District of Oklahoma. 28 U.S.C. § 1391 (a).

### THE PARTIES

2. Melissa and Jonas Havenstrite, Daniel Andrade, and Michael Chapman are Oklahoma citizens.

3. Hartford Life Insurance Company ("Hartford") is headquartered in Simsbury, Connecticut. It is a foreign insurance company that does business in Oklahoma and is an indirect wholly-owned subsidiary of the Hartford Financial Services Group, Inc., a diversified insurance and financial services company. Hartford has appeared in this action by filing an answer.

## BACKGROUND FACTS

### HARTFORD'S INSURANCE BUSINESS

4. Hartford sells retail and institutional investment products, including variable annuities, fixed MVA annuities, mutual funds, private placement life insurance (including variable universal life insurance, universal life and interest sensitive whole life insurance), and retirement plan services to more than six million customers. Hartford sells these products in the State of Oklahoma and systematically conducts its business here.

5. The Hartford financial group is among the largest providers of investment products, individual life, group life and group disability insurance products, and property and casualty insurance products in the United States and systematically conducts business in Oklahoma.

6. Hartford sells both variable and fixed individual life products. It also sells individual life insurance through national stockbroker and financial institutions channels. In addition, it distributes individual life products through independent life and property-casualty agents and Woodbury Financial Services, an indirect and wholly-owned subsidiary retail broker-dealer. Agents who sell Hartford products are located in Oklahoma.

7. One of Hartford's principal products are universal life and interest sensitive whole life insurance policies. These types of coverage provide life insurance with adjustable rates of return based on current interest rates and on the returns of the underlying investment portfolios. At December 31, 2007 and 2006, guaranteed no-lapse universal life represented approximately 8% and 6% of Hartford's life insurance in-force, respectively.

### HARTFORD'S SALE, ADMINISTRATION AND MAINTENANCE OF CORPORATE OWNED LIFE INSURANCE POLICIES

8. A substantial part of Hartford's insurance business involves the underwriting, sale, and administration of policies of Corporate Owned Life Insurance ("COLI"), including Bank Owned Life Insurance ("BOLI").

9. COLI is insurance purchased by employers covering the lives of their employees and naming the corporate employer as the beneficiary. Upon the death of the covered employee, the insurer pays the policy benefits to the employer.

10. In the case Cause Number H01-2139; *Scott Mayo, et al. v. Hartford Life Insurance Company, et al.*; in the United States District Court for the Southern District of Texas, Houston Division, Hartford's counsel stated that as many as six million people in the United States are insured by COLI policies.

11. Hartford has insured the lives of hundreds of thousands of employees through COLI policies that it either originally underwrote or acquired from Mutual Benefit Life Insurance Company. These policies are not traditional "key man" coverage. The COLI policies at issue in this case insure the lives of vast numbers of the employers' work forces.

12. Hartford underwrote or acquired COLI policies that insured the lives of, among others, employees of Advanced Telecommunications Corporation, American Business Products, Inc., American Greetings, AT&T, Ameritech, Basin Electric Power Cooperative, Bank Boston, B.F. Goodrich, BellSouth Corp., Bristol-Myers Squibb, Camelot Music, Inc., Carlisle Corp., Citizens Bank, Coca-Cola Co., Cox Enterprises, Diebold, Inc., Eastman Kodak, Fina Oil & Chemical Co., Fleet Bank, GATX Corp., Hershey Foods, Hillenbrand Industries, Household Finance, ICI Americas, Insilco Corp., McDonnell Douglas, Menasha Corp., National City Corp., NationsBank, Panhandle Eastern Corp., Procter & Gamble, RR Donnelley & Sons Co, Union Bank, Texas Eastern Transmission Corp., Wal-Mart Stores, Inc., and W.R. Grace.

### THE COLI POLICIES ON THE PLAINTIFFS' LIVES

13. On February 16, 1990, the Plaintiffs' employer secretly bought 1432 COLI policies that insured the lives of each employee who, at the time, worked more than twenty hours per week for the company. Many of the employees whose lives were insured by these COLI policies were minimum-wage store clerks whose duties included stocking the shelves, working the cash register, and providing janitorial services.

14. On February 16, 1990, Melissa Havenstrite's employer bought a secret COLI policy on her life that named the employer as the beneficiary. The policy had a face amount of $498,754 and policy number MB 211-00870. Melissa Havenstrite never gave permission for the policy on her life, never consented to its purchase, maintenance or administration, and never signed an application for the policy.

15. On February 16, 1990, Jonas Havenstrite's employer bought a secret COLI policy on his life that named the employer as the beneficiary. The policy had a

face amount of $423,191 and policy number MB 211-00540. Jonas Havenstrite never gave permission for the policy on his life, never consented to its purchase, maintenance or administration, and never signed an application for the policy.

16.  On February 16, 1990, Daniel Andrade's employer bought a secret COLI policy on his life that named the employer as the beneficiary. The policy had a face amount of $357,399 and policy number MB 211-00022. Daniel Andrade never gave permission for the policy on his life, never consented to its purchase, maintenance or administration, and never signed an application for the policy.

17.  On February 16, 1990, Michael Chapman's employer bought a secret COLI policy on his life that named the employer as the beneficiary. The policy had a face amount of $434,783 and policy number MB 211-00212. Michael Chapman never gave permission for the policy on his life, never consented to its purchase, maintenance or administration, and never signed an application for the policy.

18.  The COLI policies placed on the Plaintiffs' lives were originally underwritten by Mutual Benefit Life Insurance Company ("Mutual Benefit"). Hartford subsequently obtained rights and obligations to those policies through an Asset Purchase and Joint Venture Agreement with Mutual Benefit. Hartford later acquired the policies in their entirety when Mutual Benefit was dissolved in receivership.

### EMPLOYERS USED HARTFORD'S COLI POLICIES AS AN INVESTMENT AND TO AVOID FEDERAL INCOME TAXES

19.  Employers did not buy Hartford's COLI policies to insure against the loss of officers or key employees. They purchased the COLI policies instead as an investment and as a method to improperly avoid paying their fair share of federal income taxes.

20. The policies placed on the Plaintiffs had a policy value based on the net premium. The net premium is the premium less the policy fee, reduced by the premium expense charge. The premium expense charge is equal to the premium expense charge rate applied to the premium less the policy fee.

21. The policies featured premiums that were fixed and payable during the lifetime of the insured. The policies also had an investment component. Each net premium was to be credited to the policy value on the later of the due date for the corresponding premium or the date the corresponding premium is received. On the policy year date, the policy value was to be the first net premium less the cost of insurance for the first policy month.

22. The COLI policies on the Plaintiffs' lives state that on a policy processing date after the policy year date, the policy value is the sum of: (a) the policy value of the prior policy processing day; plus (b) all net premiums credited to the policy value since the prior policy processing day; plus (c) interest earned during the prior policy month on (a) and (b); plus (d) any dividends credited to the policy value since the prior policy processing day; less (e) the cost of insurance for the current policy month.

23. The COLI policies on the Plaintiffs' lives also state that on any day other than a policy processing day, the policy value is the sum of: (a) the policy value on the prior policy processing day; plus (b) all net premiums credited to the policy value since the prior policy processing day; plus (c) interest earned during the current month on (a) and (b).

24. The policies define "Current Credited Unloaned Interest Rate" as "the interest rate credited on that portion of the policy value which exceeds the loan balance.

If further defines "Current Credited Loaned Interest Rate" as "the interest rate credited on that portion of the policy value which is equal to the loan balance."

25. Hartford's COLI policies thus allow employers that buy the policies to invest part of the premium in the cash component of the policy. The policy on each insured employee has such a provision.

26. Hartford's COLI policies on the Plaintiffs have been found to be a sham for federal income tax purposes.

### HARTFORD USED THE PLAINTIFFS' PERSONAL INFORMATION TO PROFIT FROM THE COLI POLICIES ON THEIR LIVES

27. Insurers that place COLI policies, including Hartford, need a substantial amount of personal information about the insured employees to underwrite and maintain the policies on the employees' lives.

28. Insurers need the employee's name to place the policy on the life of a human being. They need the employee's age, date of birth, and sex to determine the cost of insurance and policy benefit from actuarial tables. They also need the employee's Social Security number to conduct "death sweeps," (computerized sweeps of national Social Security Administration computerized records and other similar databases) to learn whether the employee has died. Often, insurers also require a statement that the employee is generally in good health, such as a statement that the employee has been actively at work for a certain period of time before the policy's effective date.

29. Hartford used the Plaintiffs' private information to maintain, administer and profit from the COLI policies on the Plaintiffs' lives. Hartford used the Plaintiffs' names, Social Security numbers, ages, dates of birth, and genders on a variety of forms to

administer and maintain the policies, including a general ledger of the policies, minimum payment statements, cash value confirmation reports, policy value reports, cash flow reports, and earnings analysis reports. Hartford also used their names, Social Security numbers and dates of birth to conduct "death sweeps" to learn whether any of the Plaintiffs died.

30.     Had any of the Plaintiffs died, and had his or her death been confirmed by Hartford, his or her private information would go into a "death claim register" for Hartford to pay the Plaintiffs' employer. Hartford's use of this private information was essential to the operation of the COLI policies. Because the COLI policies stayed in force and effect long after the Plaintiffs left their employment with Hartford's customer, Hartford could not pay the policy benefits without using the Plaintiffs' Social Security numbers.

31.     Hartford and its agents profited from the use of the Plaintiffs' confidential and personal information by receiving premiums, commissions and service and administration fees from the COLI policies and the transactions surrounding the policies' maintenance and administration.

### HARTFORD'S COLI POLICIES ON THE PLAINTIFFS VIOLATE OKLAHOMA LAW

32.     Hartford's COLI policies on the Plaintiffs' lives violated Oklahoma law because the Plaintiffs' employer did not have an insurable interest in their lives. Moreover, the Plaintiffs did not apply for the policies on their lives or consent to those policies.

33.     OKLA. STAT. tit. 36, § 3604 requires the beneficiary of a life insurance policy to possess an insurable interest in the life of the insured person. In *Tillman v. Camelot Music, Inc.*, 408 F.3d 1300 (10th Cir. 2005), the Tenth Circuit held that

employers do not have an insurable interest in the lives of their rank-and-file employees. Hartford's COLI policies on the Plaintiffs therefore violated Oklahoma law.

34.   OKLA. STAT. tit. 36, § 3604(C)(4)(a) requires written consent of the employee before a policy can be issued that names an employer as the policy beneficiary. The Plaintiffs never consented to the policies on their lives. Hartford's COLI policies on the Plaintiffs therefore violated Oklahoma law.

35.   OKLA. STAT. tit. 36, § 3607 requires the person insured under a life insurance policy to apply for or consent to that policy before it is written. The Plaintiffs did not consent to the COLI policies insuring their lives or apply for those policies. Hartford's COLI policies on the Plaintiffs therefore violated Oklahoma law.

### THE COLI POLICIES WERE FRAUDULENTLY CONCEALED FROM THE PLAINTIFFS

36.   The Plaintiffs' employer, with the assistance of Mutual Benefit, and later Hartford, actively concealed from the Plaintiffs and other employees that COLI policies had been placed on their lives. The employer made the affirmative corporate decision to keep the policies secret from its employees at a meeting of executives that occurred near the time it bought the policies on February 16, 1990. Mutual Benefit agreed with that course of conduct and followed the employer's instructions to keep the policies secret from employees. Hartford did the same once it acquired an interest in the policies.

37.   To further its plan of secrecy, the employer, Mutual Benefit, and later Hartford arranged to have all benefits from the COLI policies paid to a special account used for executive compensation. The executive compensation account was selected

specifically to keep the policies secret. It had little activity and could not be accessed by anyone other than the employer's accountant.

38. Policy benefits were later transferred from the employer's executive compensation account to its general account so employees would have no way of knowing the origin of the funds.

39. On March 28, 2002 at a trial involving the COLI policies on the Plaintiffs' lives, the former Chief Financial Officer and Vice President of Finance for the Plaintiffs' employer testified:

> Q: Now, Mr. Rogers, Camelot took precautions to prevent the employees from learning of the fact that Camelot had taken insurance on their lives, isn't that correct?
> A: That's correct. Yes.
> Q: In fact, they even went to the step of making sure that what death benefit proceeds came in did not go into the general account of Camelot; correct?
> A: Yes, that's true, because once you let a few people know, a few people are going to tell a few more people and you might as well tell the entire company. If you make the decision to keep this information limited to a small group, you have to work hard to keep it maintained to a small group.

40. He also testified on March 29, 2000 that the employer kept the COLI policies and death benefits secret because it did not want employees to believe that they were entitled to any part of the policy benefits. .

41. Mutual Benefit and Hartford also concealed the existence of the COLI policies on the Plaintiffs' lives by violating Oklahoma law. Both insurers were obligated by statute to obtain an application for the policies or consent to them from the Plaintiffs. They did not do so and, instead, issued, maintained, and administered the policies without the Plaintiffs' application or consent. Mutual Benefit's and Hartford's violation of

Oklahoma statutes improperly concealed the existence of the COLI policies from the Plaintiffs.

42. Because of Hartford's acts and omissions, individually and in participation with the employer and Mutual Benefit, no person of ordinary prudence, including the Plaintiffs, could have discovered that the COLI policies had been illegally placed on their lives. No person of ordinary prudence could have anticipated that Hartford and Mutual Benefit would violate applicable law by secretly placing, maintaining and administering the illegal insurance policies on the lives of Oklahoma rank-and-file employees. Because of Hartford's intentional efforts to keep the policies secret, no person of ordinary prudence could have discovered the existence of the COLI policies. As a result of Hartford's conduct, the Plaintiffs did not discover the claims asserted in this case until 2008.

## THE PLAINTIFFS' CLAIM

### HARTFORD MISAPPROPRIATED THE PLAINTIFFS' NAMES AND IDENTITIES

43. Hartford knowing used and appropriated the Plaintiffs' names and identities for the associated value, specifically to earn profits by administering the COLI policies on the Plaintiffs' lives. Hartford used the names and other personal information for the life insurance policies and profited by receiving premiums, commissions and service and administration fees from those policies and the transactions surrounding the policies' maintenance and administration. The Plaintiffs' names and identities had value to Hartford because the COLI policies on the Plaintiffs could not have existed without Hartford's use of their associated names and personal information.

44. The Plaintiffs can be identified from Hartford's publication of their personal information. They can be identified through the policy, the information included in various administrative reports (including a general ledger of the policies, minimum payment statements, cash value confirmation reports, policy value reports, cash flow reports, and earnings analysis reports) the information used in the "death sweeps" and other information not yet discovered or known.

45. Hartford derived a direct benefit from its use of the Plaintiffs' names, identities, and personal information. As mentioned above, Hartford received premiums, commissions and service and administration fees from the COLI policies on the Plaintiffs' lives. Hartford wrongfully obtained for itself the benefits of the Plaintiffs' names and identities.

46. Because Hartford appropriated the Plaintiffs' names and identities for its own use without the Plaintiffs' permission or consent, the Plaintiffs are entitled to disgorge the profits Hartford made from its misuse of their names and identities.

## THIS CASE IS APPROPRIATE FOR CLASS CERTIFICATION

47. The Plaintiffs request certification of a plaintiff class or comprised of all those similarly situated. The requested plaintiff class meets the prerequisites of a class action under FED. R. CIV. P. 23(a) and is maintainable under FED. R. CIV. P. 23 (b)(1), (2) or (3). As soon as practicable, the Plaintiffs ask the court to certify this case as a class action. *See* FED. R. CIV. P. 23(c).

## PRAYER

The Plaintiffs, individually and on behalf of the members of the putative class, ask for the following:

(a) the certification of a plaintiff class that includes Oklahoma citizens whose lives have been insured by a Hartford COLI policy without their permission or consent;

(b) a final judgment awarding the Plaintiffs and plaintiff class all of the damages to which they are entitled, including nominal and punitive damages, and the disgorgement of all profits Hartford obtained from placing, maintaining, and administering COLI policies on the lives of Oklahoma citizens; and;

(c) all other relief allowed by law or equity, including, if applicable, pre-judgment and post-judgment interest, costs, attorneys' fees.

Respectfully submitted,

**TAYLOR, BURRAGE, FOSTER, MALLETT, DOWNS & RAMSEY**

Stratton Taylor, OBA # 101042
Sean Burrage, OBA # 15078
400 West Fourth Street
P.O. Box 309
Claremore, Oklahoma 74018
Telephone: (918) 343-4100
Facsimile: (918) 343-4900

**MCCLANAHAN • MYERS • ESPEY, L.L.P.**

By:      /s/ Michael D. Myers
      Michael D. Myers, OBA # 21927
      Robert H. Espey, II
      4100 Bank of America Center
      700 Louisiana
      Houston, Texas 77002
      Telephone: (713) 223-2005
      Facsimile:   (713) 223-3664

**ATTORNEYS FOR THE PLAINTIFFS**

*Amended Complaint, page 13.*

## CERTIFICATE OF SERVICE

I, Michael D. Myers, certify that I have served a copy of the above and foregoing pleading by electronic filing to:

Timothy A. Carney, OBA # 11784
Erin K. Dailey, OBA # 20189
Jennifer M. Hurley, OBA # 21709
GableGotwals, P.C.
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Facsimile: (918) 595-4995

DATED this 15th day of August 2008.

                                                      /s/ Michael D. Myers
                                                      Michael D. Myers