**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MELISSA HAVENSTRITE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 08-CV-410-GKF-PJC |
| ) | |
| HARTFORD LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion to Dismiss plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted.

The plaintiffs in this case are Oklahoma citizens. They allege that, on February 16, 1990, their former employer, Camelot Music, Inc. ("Camelot") purchased corporate-owned life insurance ("COLI") policies on their lives, and the lives of 1,432 Camelot employees who, at the time, worked more than twenty hours per week for the company. First Amended Complaint, ¶ 13. Camelot named itself as beneficiary.[1] Camelot first obtained the COLI policies from Mutual Benefit Life Insurance Company ("Mutual Benefit"). Defendant Hartford Life Insurance Company ("Hartford") subsequently obtained rights and obligations under those policies through an Asset Purchase and Joint Venture Agreement with Mutual Benefit. First Amended Complaint, ¶ 18. Thereafter, Hartford collected the COLI policy premiums and service and administration fees. First Amended Complaint, ¶ 31. Plaintiffs allege that Hartford used their names, identities, and personal information to maintain, administer and profit from the COLI policies on their lives. Among other

---

[1] Camelot purchased the COLI policies in an effort to take advantage of a provision in the Internal Revenue Code. *Tillmon v. Camelot Music, Inc.*, 408 F.3d 1300, 1302 (10th Cir. 2005). "Camelot actively concealed the existence of the COLI policies from the insured employees." *Id.* In 1996, Camelot filed for bankruptcy in the District of Delaware. "As part of the bankruptcy proceedings, Camelot was disallowed from continuing its COLI-based interest deductions because the policies lacked economic substance and portions of the program were shams-in-fact." *Id.*

things, plaintiffs allege that Hartford used their Social Security numbers to conduct "death sweeps" to learn whether any of the COLI insureds had died. Plaintiffs argue that the COLI policies on their lives violate Oklahoma law because they were not "key employees" and therefore Camelot did not have an insurable interest in their lives. They bring this action for misappropriation of their names and identities without their permission or consent. They seek the disgorgement of profits Hartford made from its alleged misuse of their names and identities.

Hartford outlines two arguments for dismissal, but in actuality makes three. First, Hartford argues that plaintiffs' statutory claim for misappropriation of identity fails to state a claim under Okla. Stat. tit. 21, § 839.1. The plaintiffs respond that their statutory claim arises under Okla. Stat. tit. 12, § 1449(A), not § 839.1. In its reply brief, Hartford addresses for the first time whether plaintiffs have stated a claim under § 1449(A). This Court will not consider arguments raised by a movant for the first time in a reply. Hartford's first argument does not address the basis of plaintiffs' statutory claim for misappropriation of identity.

Hartford's second argument is for dismissal of plaintiffs' common law claim for misappropriation of identity, and can be found on page five of its opening brief. Specifically, Hartford argues that plaintiffs cannot bring both a common law claim and a statutory claim for misappropriation of identity, and that plaintiffs' claims should be construed as a single claim arising under statute. In 1965, Oklahoma enacted § 839.2, which granted a private right of action to sue for damages when one's name, portrait or picture was used for the purpose of advertising the sale of any goods, wares or merchandise, or for the solicitation of patronage by any business enterprise. In 1980, the Oklahoma Supreme Court recognized the common law tort of invasion of privacy in all four categories set out in the Restatement (Second) of Torts § 652A. *McCormack v. Oklahoma*

*Pub. Co.*, 1980 OK 98, 613 P.2d 737. Hartford has failed to explain how § 839.2, enacted in 1965, could operate to displace, supplant, or supercede the overlapping common law claim for misappropriation recognized by the Supreme Court fifteen years later. In 1985, Oklahoma adopted § 1449, which creates a statutory right of action when a person knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without the person's prior consent.

The authority upon which Hartford relies does not support the position that a plaintiff cannot bring both a common-law and a statutory claim for misappropriation of identity. In *Showler v. Harper's Magazine Found.*, 222 Fed. Appx. 755, 762-63 (10th Cir. 2007), the Tenth Circuit addressed the issue of whether a certain photograph constituted an appropriation of an individual's likeness for commercial purposes under *both* the Restatement *and* the Oklahoma statute. 222 Fed. Appx. at 763-64. *Showler* does not state that a plaintiff cannot bring both a statutory and a common law claim. Similarly, *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, 708 P.2d 1068, contains no language stating that a plaintiff cannot bring both a common law misappropriation claim and a statutory claim under § 839.1. A reasonable reading of *LeFlore* suggests that the plaintiff brought her appropriation claim under §§ 839.1 and 839.2 alone. 708 P.2d at 1070, 1073. In short, Hartford has not persuaded this Court that the plaintiffs cannot bring both a common law and a statutory claim for misappropriation of identity.[2]

Hartford's third argument is that Havenstrite has failed to state a claim under Oklahoma common law because plaintiffs fail to allege that their names are associated with any special value

---

[2] Neither party has discussed whether subsection G to § 1149 – which provides that the remedies provided for therein are cumulative and are in addition to any others provided for by law – may have a bearing on this analysis.

or that Hartford's alleged use of their names and information lessened any such value.

One of the four categories of the tort of invasion of privacy adopted by the Oklahoma Supreme Court is the "appropriation of the other's name or likeness, as stated in § 652C." That category, relevant here, is further described in § 652C as follows: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." The comments to Section 652C offer further insight in understanding the outlines of this common law tort:

> *a.* The interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others.[3] Although the protection of his personal feelings against mental distress is an important factor leading to a recognition of the rule, the right created by it is in the nature of a property right, for the exercise of which an exclusive license may be given to a third person, which will entitle the licensee to maintain an action to protect it.
>
> *b. How invaded.* The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose. Apart from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one. Statutes in some states have, however, limited the liability to commercial uses of the name or likeness.
>
> *c. Appropriation.* In order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or

---

[3] Insofar as the interest protected by the rule stated in Section 652C is the interest of the individual in the exclusive use of his own identity, the parties may wish to research the caselaw in this increasingly digital age to determine whether the term "likeness" is limited to one's physical likeness, or whether it is broad enough to include one's private, personal identifiers.

> likeness. It is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity. Unless there is such an appropriation, the defendant is free to call himself by any name he likes, whether there is only one person or a thousand others of the same name. Until the value of the name has in some way been appropriated, there is no tort.
>
>   *d. Incidental use of name or likeness.* The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

Hartford, pointing to the last sentence of Comment b, contends that Oklahoma has limited the liability for misappropriation of identity to commercial uses of the name or likeness. This Court is not yet persuaded that Oklahoma has so limited the liability in connection with a common law claim.[4] Even if Oklahoma has so limited the common law liability, the plaintiffs here allege that

---

[4] Hartford contends that both Chief Judge Eagan of this court and the Restatement have noted that Oklahoma is one of the states that limits the common law tort to advertising or for purposes of trade. To the contrary, Chief Judge Eagan recognized the distinction between Oklahoma's statutory and common-law claims when she wrote that "[p]laintiffs rely on the common law–they have not alleged a violation of Oklahoma's right of publicity statute" and denied a defendant's motion for summary judgment on a common law claim. *Lewis*, 2005 W.L. 3263377 at *22. The Reporter to the Restatement states that "[u]nder the statutes in New York, Oklahoma, Utah, and Virginia, the appropriation must be for advertising, or for purposes of trade," but the fact that Oklahoma's two statutory claims are focused on advertising, selling, and solicitation of business does not, as discussed above, limit the breadth of the

their names and identities had a specific commercial value that Hartford exploited for its own purposes and benefit.

Hartford contends that, even assuming arguendo that Oklahoma had not so limited the tort, a plaintiff must allege facts showing that the plaintiffs' names and identities had intrinsic value, separate and apart from the plaintiffs' names themselves, as a requisite element of a misappropriation of identity claim.  Hartford points to its recent success in a similar case in the Fifth Circuit, where the Court held that, "In Texas, '[t]ortious liability for appropriation of a name or likeness is intended to protect the value of an individual's notoriety or skill.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007) (quoting *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994)).  In Texas, the tort of misappropriation of name or likeness "creates property rights only where the failure to do so would result in excessive exploitation of its value." 492 F.3d at 639. The court wrote that "the restrictive interpretation of misappropriation under Texas law does not apply to Meadow's claims," because "Meadows presents no cognizable arguments that the COLI policy constituted excessive exploitation or a reduction in value of his identity." *Id.*  Hartford points to no Oklahoma law containing the "excessive exploitation" threshold contained in Texas law.

This Court agrees with both Hartford and the plaintiffs that this issue here is not whether the persons whose names are at issue have to be *celebrities*, but rather whether plaintiffs state a claim for relief under Oklahoma law.  Having reviewed the First Amended Petition, the briefs filed by the parties, and the authorities cited therein, this Court concludes that plaintiffs have adequately stated a claim for relief for the common law tort of misappropriation of their names and identities under Oklahoma law.  Plaintiffs allege that their names and identities (specifically, their names, dates of

---

common law claim.  Indeed, the Reporter notes that, "[a]part from statute, the liability is not thus limited."

birth, sex, and Social Security Numbers) had commercial value that Hartford, and its predecessor in interest, exploited. Consistent with the requirements of Comment c to Restatement § 652C, plaintiffs have alleged that Hartford and its predecessor in interest appropriated the value of their names and identities so as to issue secret COLI policies and to appropriate to Hartford's own use and benefit the commercial value of their names and private personal identifiers by receiving premiums, commissions and service and administration fees. The use alleged by plaintiffs was more than incidental, as required by Comment d, as their names and identities were allegedly misappropriated for the purpose of taking advantage of the commercial value associated with the generation of new life insurance policies and the premiums and fees the insurance company would derive therefrom. Thus, the plaintiffs adequately allege that the plaintiffs' names and identities had intrinsic value insofar as the package of personal information not otherwise available to a life insurance company allowed Hartford's predecessor to issue secret life insurance policies, with consequent commercial benefits to the seller and the servicer of those policies.

**WHEREFORE**, defendant's Motion to Dismiss [Docket No. 34] is denied.

**IT IS SO ORDERED** this 31st day of December 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma