IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA HAVENSTRITE, JONAS HAVENSTRITE, DANIEL ANDRADE, AND MICHAEL CHAPMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| PLAINTIFFS, | Civil Action Number 08CV410 GKF PJC |
| vs. | Jury demanded |
| HARTFORD LIFE INSURANCE COMPANY, | |
| DEFENDANT. | |

## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

1.      BACKGROUND FACTS .......................................................................................... 1

2.      SUMMARY OF THE ARGUMENT ....................................................................... 4

3.      ARGUMENT .............................................................................................................. 5

        3.1     The class definition ..................................................................................... 5

        3.2     The threshold requirements of Fed. R. Civ. P. 23(a) are satisfied .......... 6

        3.3     Class certification is warranted under Fed. R. Civ. P. 23(b)(3) ............. 12

        3.4     The Named Plaintiffs' attorneys should be appointed class counsel .... 15

4.      PRAYER ................................................................................................................... 17

CERTIFICATE OF CONFERENCE ...................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................ 20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allapattah Serv. Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) ........................................................................12

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................12

*In re CM Holdings, Inc.*,
    254 B.R. 578 (D. Del. 2000).................................................................1, 2, 3, 15

*Clulow v. State of Oklahoma*,
    700 F.2d 1291 (10th Cir. 1983) ..........................................................................9

*DeLeon v. Lloyd's London*,
    259 F.3d 344 (5th Cir. 2001) ............................................................................17

*Forbush v. J.C. Penney Co.*,
    994 F.2d 1101 (5th Cir. 1993) ............................................................................6

*Garcia v. Wilson*,
    731 F.2d 640 (10th Cir. 1984) ...........................................................................9

*Gilkey v. Central Clearing Co.*,
    202 F.R.D. 515 (E.D. Mich. 2001) .....................................................................9

*Lightbourn v. County of El Paso*,
    118 F.3d 421 (5th Cir. 1997) ..............................................................................7

*Markham v. White*,
    C 2065, 1999 WL 1072647 (N.D. Ill. Sept. 9, 1999).......................................10

*Mayo v. Hartford Life Ins. Co.*,
    220 F. Supp. 2d 714 (S.D. Tex. 2002) .............................................................17

*Mayo v. Hartford Life Ins. Co.*,
    354 F.3d 400 (5th Cir. 2004) ............................................................................17

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) ............................................................................17

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ..................................................................7, 11, 12

*Newcomb v. Ingle*,
    827 F.2d 675 (10th Cir. 1983) ...................................................................9

*Richard v. Wal-Mart Stores, Inc.*,
    559 F.3d 341 (5th Cir. 2009) ...................................................................17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ...............................................................11

*Shaw v. Toshiba America Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)...............................................6, 12, 13

*Tillman v. Camelot Music, Inc.*,
    408 F.3d 1300 (10th Cir. 2005) ..........................................................3, 14, 17

**STATE CASES**

*Bilbrey v. Cingular Wireless, L.L.C.*,
    164 P.3d 131 (Okla. 2007)......................................................................16

*Certain Underwriters at Lloyd's, London v. Smith*,
    77 S.W.3d 859 (Tex. App.-Houston [14th Dist.]), *withdrawn*, 93 S.W.3d 657
    (Tex. App.-Houston [14th Dist.] 2002) ...................................................17

*James v. Bob Ross Buick, Inc.*,
    855 N.E.2d 119 (Ohio Ct. App. 2006)........................................................8

*McCormack v. Oklahoma Pub. Co.*,
    613 P.2d 737 (Okla. 1980)........................................................................7

*Stillwagoner v. Travelers*,
    979 S.W.2d 354 (Tex. App.-Tyler 1998, no pet.)......................................17

*Tamez v. Lloyd's London*,
    999 S.W.2d 12 (Tex. App.-Houston [14th Dist.] 1998, pet. denied)...............17

*Torrez v. Winn-Dixie Stores, Inc.*,
    118 S.W.3d 817 (Tex.App.—Fort Worth 2003, pet. dism'd) ...........................17

*Weathers v. Fulgenzi*,
    884 P.2d 538 (Okla. 1994)........................................................................9

**FEDERAL STATUTES**

FED. R. CIV. P. 23 ............................................................................................1, 4, 5, 6, 10, 11, 12,
13, 15

RESTATEMENT (SECOND) OF TORTS § 652C .......................................................7, 8, 13

**STATE STATUTES**

OKLA. STAT. TIT. 12, § 1449 ............................................................................7, 8, 13

OKLA. STAT. TIT. 36, § 3604 ...............................................................................8, 14

OKLA. STAT. TIT. 36, § 3607 ...............................................................................8, 14

## MOTION FOR CLASS CERTIFICATION

Melissa Havenstrite, Jonas Havenstrite, and Michael Chapman, (collectively the "Named Plaintiffs") request certification of a plaintiff class under FED. R. CIV. P. 23.

## 1.    BACKGROUND FACTS

In 1990, Camelot Music, Inc. insured the lives of the 1,430 employees who worked more than twenty hours a week for the company.[1]  Camelot named itself as the policy beneficiary, meaning that it would receive the policy benefits when employees died, and its former president and CEO[2] described the coverage in terms difficult to misinterpret:

> The only piece that I understand out of it, or that I recall now, is that we, the company, had insurance on the life of an employee, and if the employee passed away, got killed or whatever, we got the proceeds.  We were the beneficiary.[3]

The policies were initially written by Mutual Benefit Life Insurance Company, but later acquired and administered by Hartford Life Insurance Company when Mutual Benefit went into receivership.[4]  Melissa Havenstrite (formerly Mills), Jonas Havenstrite, and Michael Chapman

---

[1]     *In re CM Holdings, Inc.,* 254 B.R. 578, 590 (D. Del. 2000).

[2]     Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**)  authenticating the declaration of Leonard A. Dibbs., July 23, 2001 (**Exhibit B**), authenticating March 30, 2000 trial transcript in *CM Holdings* (**Exhibit B-4**), p. 798 l. 22 to p. 799 l. 2, testimony of James E. Bonk (Bonk served as president and CEO through 1994).

[3]     Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) authenticating the declaration of Leonard A. Dibbs, July 23, 2001 (**Exhibit B**), authenticating March 30, 2000 trial transcript in *CM Holdings* (**Exhibit B-4**), p. 814, l. 17-21, testimony of James E. Bonk.

[4]     "Hartford Life Insurance Company's Answer and Defenses to the Named Plaintiffs' First Amended Class Action Complaint," ¶ 18, [Dkt. No. 46].

were each covered by one of the policies while they worked for Camelot in Oklahoma.[5] Melissa's life was insured for $498,754, Jonas' for $423,191 and Michael's for $434,783.[6]

Camelot did not tell its employees that it insured their lives for its benefit.[7]  In fact, Camelot went to great lengths to keep the policies secret from employees.  Camelot's former Chief Financial Officer and Vice President of Finance, Jack Rogers testified:

> Q:    Now, Mr. Rogers, Camelot took precautions to prevent the employees from learning of the fact that Camelot had taken insurance on their lives, isn't that correct?
>
> A:    That's correct.  Yes.
>
> Q:    In fact, they even went to the step of making sure that what death benefit proceeds came in did not go in the general account of Camelot; correct?
>
> A:    Yes, that's true, because once you let a few people know, a few people are going to tell a few more people and you might as well tell the entire company.  If you make the decision to keep this information limited to a small group, you have to work hard to keep it maintained to a small group.[8]

---

[5]    "Hartford Life Insurance Company's Answer and Defenses to the Named Plaintiffs' First Amended Class Action Complaint," ¶¶ 13-17, [Dkt. No. 46].

[6]    "Hartford Life Insurance Company's Answer and Defenses to the Named Plaintiffs' First Amended Class Action Complaint," ¶¶ 13-17, [Dkt. No. 46].

[7]    Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) authenticating the declaration of Leonard A. Dibbs, July 23, 2001 (**Exhibit B**), authenticating March 28, 2000 trial transcript in *CM Holdings* (**Exhibit B-2**), p. 376 l. 2-5, testimony of Jack Rogers (Camelot took precautions to prevent the employees from learning that Camelot had insured their lives) and authenticating the March 30, 2000 trial transcript in *CM Holdings* (**Exhibit B-4**), p. 741 l. 13-18, testimony of Tom Knoll, (Camelot decided not to notify the employees that they were going to be covered under some broad-based insurance program).

[8]    Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) authenticating the declaration of Leonard A. Dibbs, July 23, 2001 (**Exhibit B**) authenticating March 28, 2000 trial transcript in *CM Holdings* (**Exhibit B-2**), p. 376 l. 2-15.

Camelot kept the policies secret because it did not want employees or their families to believe that they were entitled to any part of the policy benefits.[9]  It was successful and only four people within the company knew the policies existed.[10]  This Court, Chief Judge Egan presiding, previously ruled that the policies were fraudulently concealed from the employees.[11]

The policies on Camelot's employees were not unique.  Several large employers invested in these "corporate owned life insurance" or "COLI" programs.[12]  Many, like Camelot, never informed their employees about the policies on their lives.  American Greetings Corporation, Anadarko Petroleum Corp. and JP Morgan & Company, Inc. have each admitted in this litigation that they never notified employees about the COLI policies insuring their lives.[13]  Several others, including Advanced Telecommunications Corp., ALCO Standard Corporation, American Bankers Insurance Group, American Business Products, American Telephone & Telegraph Co., Ball Corporation, Houghton-Mifflin Co., R.R. Donnelley & Sons Co., and Stauffer Management Co. have no evidence that they ever notified their employees about the coverage.[14]  Each of these

---

[9]   Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) authenticating the declaration of Leonard A. Dibbs, July 23, 2001 (**Exhibit B**) authenticating March 28, 2000 trial transcript in *CM Holdings* (**Exhibit B-2**), p. 375 l. 8-19.

[10]  Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) authenticating the declaration of Leonard A. Dibbs, July 23, 2001 (**Exhibit B**) authenticating March 28, 2000 trial transcript in *CM Holdings* (**Exhibit B-2**), p. 224 l. 2-6.

[11]  September 29, 2003 "Order" entered as Dkt. No. 53 in Cause No. 4:02-CV-00761-CVE-saj, *Tillman v. Camelot Music, Inc*., pp. 15-17 (**Exhibit C**).

[12]  "Hartford Life Insurance Company's Answer and Defenses to the Named Plaintiffs' First Amended Class Action Complaint," ¶¶ 11-12, [Dkt. No. 46].

[13]  Deposition of JP Morgan & Company, Inc. (**Exhibit D**), Deposition of American Greetings Corporation (**Exhibit E**), and Deposition of Anadarko Petroleum Corp. (**Exhibit F**).

[14]  Deposition of Verizon Communications, Inc. (the successor in interest to Advanced Telecommunications Corp.) (**Exhibit G**), Letter from Theresa M. Levine, Sr. Employment Law/EEO Specialist for IKON Office Solutions, Inc. (the successor in

companies' COLI policies insured the lives of Oklahoma employees and were either written by

Hartford or acquired by it from Mutual Benefit Life.[15]

## 2.    SUMMARY OF THE ARGUMENT.

The Named Plaintiffs request certification of a plaintiff class of Oklahoma employees

who, like them, were made the subject of a Hartford COLI policy without their consent.  Class

certification is appropriate if the Named Plaintiffs satisfy the four prerequisites of FED. R. CIV. P.

23(a) and at least one provision of FED. R. CIV. P. 23(b).

Rule 23(a) requires:  (1) the class to be sufficiently numerous, (2) an issue of law or fact

common to all class members, (3) the named plaintiff's claim to be typical of the class members'

claims and (4) an assurance that the named plaintiff and its counsel will adequately represent the

class.  Those four prerequisites are satisfied here.  Hartford does not contest Rule 23(a)(1)'s

"numerosity" requirement.  Rule 23(a)(2)'s "commonality" requirement is satisfied because

common issues of law and fact dominate all class members' claims on the merits, the measure

and amount of damages, and many of Hartford's affirmative defenses.  Common issues include:

(1) Hartford's use of the class members' names and personal information in its products, (2) the

lack of consent, (3) Hartford's violation of Oklahoma law by issuing and maintaining life

insurance policies on persons who did not apply for the policy or consent to it, (4) the

appropriate measure of damages and the calculation of Hartford's profits, (5) several of

---

interest to ALCO Standard Corporation) (**Exhibit H**), Deposition of American Bankers
Insurance Group (**Exhibit I**), Deposition of Cenveo, Inc. (the successor in interest to
American Business Products) (**Exhibit J**), Declaration of James F. Dionne (**Exhibit K**),
Deposition of Ball Corporation (**Exhibit L**), Deposition of Houghton-Mifflin Co.
(**Exhibit M**), Deposition of R.R. Donnelley & Sons Co. (**Exhibit N**), and Deposition of
Akzo Nobel Paints, LLC (the successor in interest to Stauffer Management Co.) (**Exhibit
O**).

[15]    Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) and e-mail from
Hartford's counsel identifying Oklahoma policyholders (**Exhibit A-1**).

Hartford's affirmative defenses, and (6) the application of Oklahoma's tolling doctrines. These same issues also demonstrate the Named Plaintiffs' "typicality" under Rule 23(a)(3) because their claims are identical to those possessed by all class members, they have the same measure of damages, and Hartford's affirmative defenses fail for identical reasons. Rule 23(a)'s final prerequisite, adequacy of representation, is also satisfied. The Named Plaintiffs have the same interest as all class members in the outcome of this litigation and have pushed this case beyond a motion to dismiss. They have also retained counsel who are experienced and qualified. Both the Named Plaintiffs and their counsel have already expended considerable time and resources in this litigation and will continue to do so on behalf of the class.

FED. R. CIV. P. 23(b)(3) permits certification when common questions of law or fact predominate over individual ones and a class action is a superior method of resolving the controversy. This case is particularly well-suited for certification under Rule 23(b)(3). As described below, the elements of each class members' case are identical. Common issues of law and fact predominate over any issues that may concern only individual class members. Resolving all class members' claims in this forum is also a superior way of resolving the claims of hundreds of putative class members. For these reasons, the Court should certify the putative class.

**3.     ARGUMENT.**

  **3.1     The class definition.**

In all, Hartford wrote or administered COLI policies on the employees of forty Oklahoma employers.[16] The Named Plaintiffs investigated each of these COLI programs and eliminated those in which the employer, even arguably, notified employees that a policy would be placed on

---

[16]     Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) and e-mail from Hartford's counsel identifying Oklahoma policyholders (**Exhibit A-1**).

their lives.  After written discovery and document production from Hartford, a motion to compel,

two hearings over discovery disputes, hours of discovery negotiations, and depositions on written

questions of twenty-four employers, the Named Plaintiffs have defined the putative class as the

employees of twelve Oklahoma employers.  These employers were selected because they either:

(1) admitted that they did not inform employees about the COLI policies, or (2) there is no

evidence that they notified their employees about the policies on their lives.  The Named

Plaintiffs request certification of a plaintiff class defined as:

> Every Oklahoma citizen whose life was insured by a policy of corporate owned
> life insurance that was written or administered by Hartford Life Insurance
> Company and purchased by Advanced Telecommunications Corp., ALCO
> Standard Corporation, American Bankers Insurance Group, American Business
> Products, American Greetings Corporation, American Telephone & Telegraph
> Co., Anadarko Petroleum Corp., Ball Corporation, Camelot Music, Inc.
> Houghton-Mifflin Co., JP Morgan & Company, Inc., R.R. Donnelley & Sons Co.,
> or Stauffer Management Co.

### 3.2    The threshold requirements of FED. R. CIV. P. 23(a) are satisfied.

### FED. R. CIV. P. 23(a)(1), Numerosity

Class actions may be maintained if "the class is so numerous that joinder of all members

is impracticable."[17]  Hartford does not contest numerosity.

### FED. R. CIV. P. 23(a)(2), Commonality

A class action may be maintained if "there are questions of law or fact common to the

class."[18]  "A common question is one which, when answered as to one class member, is

answered as to all."[19]  The test for commonality is not demanding and is met "where there is at

---

[17]    FED. R. CIV. P. 23(a)(1).

[18]    FED. R. CIV. P. 23(a)(2).

[19]    *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 954 (E.D. Tex. 2000) (citing
*Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).

least one issue, the resolution of which will affect all or a significant number of putative class members."[20]

The Named Plaintiffs sued Hartford because it used their names and other personal information to administer secret insurance policies on their lives. They assert two claims to remedy Hartford's use of their confidential information without consent. The first is a statutory claim under OKLA. STAT. tit. 12, § 1449(A) which provides a cause of action against any person who, without consent, knowingly uses another's name, in any manner, on or in products, merchandise, or goods.[21] The second is a common-law claim for "Appropriation of Name or Likeness" under the RESTATEMENT (SECOND) OF TORTS § 652C that was adopted by the Oklahoma Supreme Court in 1980.[22] Hartford is liable under OKLA. STAT. tit. 12, § 1449(A) if it used the class members' names in its insurance policies and administrative reports without their consent. It is also liable to the class at common law if it "appropriated [their] names to its own use or benefit."[23]

By definition, every class member's name and personal information appears in Hartford's policies or administrative reports on those policies. The first essential element of the statutory

---

[20]  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).

[21]  OKLA. STAT. tit. 12, § 1449(A) states:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof, and any profits from the unauthorized use that are attributable to the use shall be taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

[22]  *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 740 (Okla. 1980).

[23]  RESTATEMENT (SECOND) OF TORTS § 652C (1977).

and common-law claims, whether the Named Plaintiffs' and class members' names and personal information appear in Hartford's products, is therefore an issue common to all. The issue of consent is also a common one under Oklahoma law. Since 1957, the Oklahoma law now codified as OKLA. STAT. tit. 36, § 3607 has required the insurer to secure a policy application or consent form signed by the insured person before it issues a policy. And since 1994, OKLA. STAT. tit. 36, § 3604(C)(4)(a) likewise has required written consent of the employee before a policy can be issued that names an employer as the policy beneficiary. Consequently, Oklahoma law had defined what constitutes "consent" to a COLI policy and that documentary information must be in the hands of Hartford or employer. Here, Hartford has conceded that it does not have a policy application or consent form for any member of the putative class and every employer named in the class definition had stated that it also has no evidence of consent.

The measure of damages is also an issue common to all class members. OKLA. STAT. tit. 12, § 1449(A) provides for the recovery of damages that include the defendant's profit from the unauthorized use of the person's name.[24] The Named Plaintiffs' common-law claim is similar and courts applying the RESTATEMENT permit disgorgement of the defendant's profit as a remedy.[25] In this case, every class member has the same arguments for the recovery of Hartford's profit from the policies on their lives. And, as demonstrated in §3.3 below, the

---

[24]    *Id.*

[25]    *See James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 124 (Ohio Ct. App. 2006) (applying the Restatement (Second) of Torts § 652C and holding "The monetary benefit that [the defendant] received as a result of its wrongful use of James's name is an appropriate (although not exclusive) measure of James's actual damages.").

calculation of those damages is a simple matter because every COLI policy at issue here includes a profit component in either the premium formula or expense charge.[26]

Finally, Hartford's affirmative defenses provide additional examples of issues common to all class members. Defenses of limitations, standing, consent, and redress for injury present common issues. Hartford has argued, for example, that all class members' claims are subject to a two-year limitations period and that "it is extremely unlikely that the proposed class will include *anyone* whose claim did not accrue more than two years before this lawsuit."[27] Hartford has therefore conceded that limitations applies to all class members equally and is therefore an issue common to them all. Oklahoma's tolling doctrines also present common issues. Moreover, Oklahoma recognizes a discovery rule that applies a "reasonable person" standard.[28] Oklahoma's fraudulent concealment defense also requires a "reasonable person" test.[29] Because the jury will decide the class' defenses to limitations using an objective standard, limitations and associated tolling provisions are common issues that are perfectly-suited for class treatment.[30]

---

[26]    Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) and correspondence from Hartford's counsel stating where profit components are contained in policy formulas (accompanying chart withheld because of confidentiality designation) (**Exhibit A-2**).

[27]    Hartford's Motion for Protective Order at xiii to xiv [Dkt. No. 51] (emphasis Hartford's).

[28]    *Weathers v. Fulgenzi*, 884 P.2d 538, 541 (Okla. 1994) (stating that the "statute of limitations is tolled until such time as a reasonable person under the circumstances of the case knows or would have discovered the injury and resulting cause of action.").

[29]    *Clulow v. State of Oklahoma*, 700 F.2d 1291, 1301 (10th Cir. 1983) ("the plaintiff was required to 'allege facts showing affirmative conduct upon the part of the defendant which would . . . lead a reasonable person to believe that he did not have a claim for relief'"), *overruled on other grounds by Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984); *Newcomb v. Ingle*, 827 F.2d 675 (10th Cir. 1983).

[30]    *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 522 (E.D. Mich. 2001) ("Members of a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentation. It is sufficient if the class can establish that a

What a "reasonable person" would think cannot vary among class members. This is especially true here because the proposed class definition includes only those persons who were never informed about the policies on their lives.

Issues common to all class members include every element of their case-in-chief, the measure of their damages and many of Hartford's affirmative defenses. Some of these common issues are: (1) Hartford's use of the class members' names and personal information in its products, (2) the lack of consent, (3) Hartford's violation of Oklahoma law by issuing and maintaining life insurance policies on persons who did not apply for the policy or consent to it, (4) the appropriate measure of damages and the calculation of Hartford's profits, (5) several of Hartford's affirmative defenses, and (6) the application of Oklahoma's tolling doctrines. FED. R. CIV. P. 23 (a) (2)'s commonality requirement is satisfied here because common issues of law and fact pervade the entire case.

### FED. R. CIV. P. 23(a)(3), Typicality

The test for typicality is also not demanding. It is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[31] Here, Named Plaintiffs need only prove that Hartford used their names and other personal information, without consent, in its life insurance products. Putative class members would also premise Hartford's liability on that same theory and prove their case the same way. The Named Plaintiffs also seek the profits that Hartford made from the secret policies on their lives, as would all class members.

---

reasonable person would have relied on the representation."); *Markham v. White*, No. 95 C 2065, 1999 WL 1072647, at *4 (N.D. Ill. Sept. 9, 1999) ("The Court finds that the issues of establishing whether the defendants' conduct created an objectively hostile or abusive environment for its female trainees—an environment that a reasonable person would find hostile or abusive—and whether the defendants conspired to create such an environment will predominate at trial.").

[31]    FED. R. CIV. P. 23(a)(3).

Thus, the legal arguments and relief sought by the Named Plaintiffs are the same as those that would be made and sought by every class member.  The Named Plaintiffs' claims are therefore typical of those possessed by every member of the putative class.

### FED. R. CIV. P. 23(a)(4), Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.[32]  The resolution of two questions determines adequacy: (1) do the Named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the Named Plaintiffs and their counsel prosecute the action vigorously on behalf of the class?[33] "Class members are entitled to be represented by attorneys who will litigate zealously on their behalf and who have the experience and ability to conclude the lawsuit successfully."[34]

The docket sheet demonstrates that the Named Plaintiffs and their counsel have expended an immense amount of time and resources pursuing this litigation on behalf of the putative class. They have defeated Hartford's motions to dismiss and "show cause" why the class certification request should not be stricken.  They have taken discovery of Hartford and twenty-four employers that bought its COLI polices.  They have also monitored the litigation, answered Hartford's written discovery, and appeared for depositions.  The effort of the Named Plaintiffs and their counsel cannot be questioned.  There is also no conflict of interest between the Named Plaintiffs, their counsel, and members of the putative class.  They have exactly the same interest

---

[32]      *Mullen,* 186 F.3d at 625.

[33]      *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002) (citation omitted).

[34]      *Id*.

as the class in this case:  seeking the profits Hartford from the secret COLI policies on their lives.[35]  FED. R. CIV. P. 23(a)(4)'s adequacy requirement is satisfied here.

Finally, FED. R. CIV. P. 23(g)(1)(C)(i) requires a court to consider several factors when appointing class counsel.  As demonstrated in detail in §3.4 below each of these factors weigh in favor of appointing the Named Plaintiffs' counsel as class counsel here.  These factors also show that the putative class has received adequate representation.

### 3.3     Class certification is warranted under FED. R. CIV. P. 23(b)(3).

#### *Common issues predominate*

An action may be maintained as a Rule 23(b)(3) class action if the elements of Rule 23(a) are satisfied and if:  (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[36] The predominance question serves two functions, an assurance that the adjudication of related claims in a single action will conserve resources and protection of the absent plaintiffs' rights to due process "by showing that a class is cohesive."[37]  The predominance question is satisfied where the "common issues . . . constitute a significant part of the individual cases."[38]

"To determine whether common questions predominate, we are called upon to examine the cause of action asserted in the complaint on behalf of the putative class."[39] As described

---

[35]     *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) ("The adequacy of representation inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

[36]     FED. R. CIV. P. 23(b)(3); *see Amchem,* 521 U.S. at 615.

[37]     *Shaw,* 91 F. Supp. 2d at 955.

[38]     *Mullen,* 186 F.3d at 626.

[39]     *Allapattah Serv. Inc. v. Exxon Corp.,* 333 F.3d 1248, 1260 (11th Cir. 2003).

above, the Named Plaintiffs, like all class members, have a statutory claim under OKLA. STAT. tit. 12, § 1449(A) and a common-law claim for "Appropriation of Name or Likeness" under the RESTATEMENT (SECOND) OF TORTS § 652C.  The entirety of every class member's case-in-chief, including Hartford's use of their names and personal information, lack of consent, and damages are common issues.  Hartford's affirmative defenses create other issues common to all class members.  Under these circumstances, common issues predominate over individual ones—if any.

### *One class action is a superior method of adjudicating the class's claims*

FED. R. CIV. P. 23(b)(3)'s final requirement for class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Factors bearing on this "superiority" assessment are:  (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action.[40]

The first three factors weigh in favor of class certification.  The Named Plaintiffs and their counsel believe that this is the only case of its type brought by Oklahoma employees.  Thus, there is no interest by individual class members in controlling the prosecution of separate actions.  Moreover, resolving all of the class members' claims in this one case is a more efficient use of judicial resources that hundreds of individual suits filed across Oklahoma.  The repeated adjudication of the same issues that have already been decided here would constitute a waste of those resources.

---

[40]    FED. R. CIV. P. 23(b)(3)(A)-(D); *Shaw,* 91 F. Supp. 2d at 958.

The final element of the superiority analysis concerns "the difficulties likely to be encountered in the management of a class action." The management of this case as a class action will be simple. The Named Plaintiffs and class members will establish their case-in-chief by proving only that Hartford used their names and personal information in its policies and administrative reports. This is simply a matter of looking at the documentary evidence. Moreover, Hartford has essentially conceded the matter by admitting "that, to underwrite a COLI policy purchased by a company on the life of an employee, Hartford may require the employee's name, age, date of birth, gender, and/or social security number."[41] Hartford has also implicitly conceded that the information it used in the policies is confidential. In the case *Tillman v. Camelot Music, Inc.*, Hartford Assistant Vice President James Van Etten testified by declaration about certain documents from the Camelot COLI program, including the schedule of insured employees.[42] That document contained each covered employee's name, date of birth, age, sex and social security number; which Mr. Van Etten designated "confidential."[43] Moreover, the issue of consent is a simple one under Oklahoma law because Hartford and the employers named in the class definition have already admitted that they do not have class members' written consent to the policies required by OKLA. STAT. tit. 36, §§ 3604(C)(4)(a) and 3607. Thus, the two essential elements of every class member's claims have either been established by admission or can easily be established on summary judgment through the introduction of simple, documentary evidence.

---

[41] "Hartford Life Insurance Company's Answer and Defenses to the Named Plaintiffs' First Amended Class Action Complaint," ¶ 28, [Dkt. No. 46].

[42] Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) and the July 8, 2003 Declaration of James Van Etten and attached "Schedule A, Insured Name Sequence" (**Exhibit A-3**).

[43] *Id*.

Calculating every class member's damages will also be a simple matter.  Many of the issues involving the form policies on the Plaintiffs' lives were analyzed in detail in the eighty-two page opinion *In re C.M. Holdings, Inc*.  One of those issues was the insurer's profit from the policies.  There, the court found that the amount of cash paid by the purchaser (the employer of the Named Plaintiffs here) matched the cost of insurance charges for the policies.[44]  Those cost of insurance charges included broker commissions, taxes, and the insurer's profit.[45]    The court also found that the profit margin to the insurance company was 20% of the cost of insurance charge for the first plan year, 10% in the second year, and 2% thereafter.[46]  Moreover, Hartford has already conceded that every COLI policy at issue here contains the insurer's profit in either the cost of insurance charge or the mortality and expense risk charge.[47]  Thus, establishing the insurer's profit from the four policies on the Plaintiffs' lives will be straightforward.

### 3.4    The Named Plaintiffs' attorneys should be appointed class counsel.

The factors a court must consider when appointing class counsel are outlined in FED. R. CIV. P. 23(g)(1)(C)(i).  These factors include:  (1) the work the counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

---

[44]      *In re C.M. Holdings, Inc*., 254 B.R. at 637.

[45]      *Id*.

[46]      *Id.* at 633.

[47]      Declaration of Michael D. Myers, September 1, 2009 (**Exhibit A**) and correspondence from Hartford's counsel stating where profit components are contained in policy formulas (accompanying chart withheld because of confidentiality designation) (**Exhibit A-2**).

Each of these factors favor the appointment of Named Plaintiffs' attorneys as class counsel here. They were solely responsible for identifying the claims against Hartford, investigating those claims, and assisting the Named Plaintiffs in bringing those claims in this case.[48] They also have extensive experience with class actions and commercial litigation.[49] More importantly, the have represented employees or their estates in virtually every case

---

[48]    Deposition of Melissa Havenstrite, p. 18, l. 17 to p. 20 l. 22 (**Exhibit P**); Deposition of Jonas Havenstrite, p. 7, l. 16 to p. 8, 3. (**Exhibit Q**); Deposition of Michael Chapman, p. 12, l. 12 to p. 13, l. 8 (**Exhibit R**).

[49]    Partners at McClanahan Myers Espey, L.L.P. have been appointed as counsel for plaintiff classes in Cause Number 02-CV-944-EA(M); *Lewis v. Wal-Mart Stores, Inc.,* in the United States District Court for the Northern District of Oklahoma, a case involving the certification of a plaintiff class for settlement of $5.097 million; Cause Number. E 170245; *Payne v. Fina Oil and Chem. Co.*, in the 172nd District Court of Jefferson County, Texas, a case involving the certification of a plaintiff class for settlement of $4 million; Cause Number H01-2139; *Mayo v. Hartford Life Insurance Company,* in the United States District Court for the Southern District of Texas, Houston Division, a case involving the certification of a plaintiff class for settlement of $10.362 million; Cause Number 97-08264; *Travelers Indemnity Company of Connecticut v. Texas Workers' Compensation Insurance Facility*; in the 250th Judicial District Court of Travis County, Texas, a case involving the certification of two classes for settlements of approximately $55 million; Cause Number 91-05637; *Weatherford Roofing Company, et al. v. Employers National Insurance Company, et al.*; in the 116th Judicial District Court of Dallas County, Texas, a case involving the certification of 14 plaintiff classes for settlements of approximately $205 million.

Attorneys with Taylor, Burrage, Foster, Mallett, Downs & Ramsey have been attorneys of record in the following class action and complex commercial cases: *Bilbrey v. Cingular Wireless, L.L.C.* 164 P.3d 131 (Okla. 2007) (class counsel); Case No. CJ 99-110-01, *Barry Cypret, et al. vs. Sprint*; in the District Court of Canadian County, Oklahoma (class counsel); Case No. CJ-99-130-65, *Farrimond, et al. v. Florida Progress Corporation, et al.*, in the District Court of Oklahoma County, Oklahoma; Case No. 02-CV-72 TCK FHM, *In Re Williams Securities Litigation*; in the United States District Court for the Northern District of Oklahoma; Case No. CJ-2000-70, *Smith v. AT&T Wireless Services, Inc.*, in the District Court of Canadian County, Oklahoma (class counsel); Case No. CJ-01-452, *R. Lynn Thompson and Deborah S. Thompson, et al. v. Tyson Foods, Inc.*; in the District Court of Mayes County, Oklahoma (defense counsel); Case No. CJ-2001-124, *Levine v. Fleet Bank (RI),* in the District Court of Canadian County, Oklahoma.

involving modern COLI policies.[50]    They have also diligently litigated this case, defeated Hartford's motion to dismiss, conducted extensive discovery, and demonstrated that they will commit the resources necessary to pursue this litigation to a conclusion.  The attorneys at the Taylor, Burrage firm and the McClanahan Myers Espey firm have no conflict of interest with the class or its members and are the only firms suited to represent the class in this action.  They should be appointed class counsel in this case.

**4.    PRAYER.**

For the reasons stated above, the Named Plaintiffs ask the Court to certify the plaintiff class defined above.

---

[50]    *See, e.g.,  Richard v. Wal-Mart Stores, Inc.,* 559 F.3d 341 (5th Cir. 2009); *Meadows v. Hartford Life Insurance Company,* 492 F.3d 634 (5th Cir. 2007); *Tillman v. Camelot Music, Inc.,* 408 F.3d 1300 (10th Cir. 2005); *Mayo v. Hartford Life Insurance Company*, 354 F.3d 400 (5th Cir. 2004); *DeLeon v. Lloyd's London*, 259 F.3d 344, 350 (5th Cir. 2001);  *Mayo v. Hartford Life Insurance Company*, 220 F. Supp.2d 714 (S.D. Tex. 2002); *Torrez v. Winn-Dixie Stores, Inc*., 118 S.W.3d 817 (Tex.App.—Fort Worth 2003, pet. dism'd); *Certain Underwriters at Lloyd's, London v. Smith*, 77 S.W.3d 859 (Tex. App.–Houston [14th Dist.]), *withdrawn*, 93 S.W.3d 657 (Tex. App.–Houston [14th Dist.] 2002); *Tamez v. Lloyd's London*, 999 S.W.2d 12 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); *Stillwagoner v. Travelers*, 979 S.W.2d 354 (Tex. App.–Tyler 1998, no pet.)

Respectfully submitted,

**TAYLOR, BURRAGE, FOSTER, MALLETT, DOWNS & RAMSEY**

Stratton Taylor, OBA # 101042
Sean Burrage, OBA # 15078
400 West Fourth Street
P.O. Box 309
Claremore, Oklahoma 74018
Telephone:  (918) 343-4100
Facsimile:  (918) 343-4900

**MCCLANAHAN • MYERS • ESPEY, L.L.P**.

By:_____/s/ Michael D. Myers_____
        Michael D. Myers, OBA # 21927
        Robert H. Espey, II
        3355 West Alabama, Suite 210
        Houston, Texas 77098
        Telephone:     (713) 223-2005
        Facsimile:     (713) 223-3664

**ATTORNEYS FOR THE PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I, Michael D. Myers, certify that I have been in contact with the attorneys for Hartford Life Insurance Company throughout this case and understand that Hartford opposes class certification.

DATED this 1st day of September 2009.


_____/s/ Michael D. Myers_____
Michael D. Myers

## CERTIFICATE OF SERVICE

I, Michael D. Myers, certify that I have served a copy of the above and foregoing

pleading by electronic filing to:

Timothy A. Carney, OBA # 11784
Erin K. Dailey, OBA # 20189
Jennifer M. Hurley, OBA # 21709
GableGotwals, P.C.
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma  74103-4217
Telephone:  (918) 595-4800
Facsimile:  (918) 595-4995

Barry A. Chasnoff
David R. Nelson
Akin, Gump, Strauss, Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone:  (210) 281-7000
Facsimile:  (210) 224-2035

DATED this 1st day of September 2009.


                                        /s/ Michael D. Myers
                                        Michael D. Myers